## <u>Important Privacy Notice</u>

Federal Rule of Civil Procedure 5.2 prohibits litigants in a non-habeas proceeding from submitting documents that contain personal information. Unless the Court orders otherwise, <u>personal identifying information in Court filings must be limited as follows</u>:

• Social security numbers, taxpayer-identification numbers, and financial **account numbers must include only the last four digits** (e.g., xxx-xx-1234)

• Birth dates must **include the year of birth only** (e.g., xx/xx/2000)

• Names of persons under the age of 18 must be indicated by **initials only** (e.g., A.B.)

You are responsible for protecting the privacy of this information in your filings. If your documents, including attachments, contain any information that does not comply with this rule, please black out that information before sending your documents to the Court.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

Onica Cox
_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

**- against -**

United Parcel Service, Inc.
_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**COMPLAINT**

Jury Trial: ☐ Yes   ☐ No

(check one)

**I.    Parties in this complaint:**

A.    List your name, address and telephone number.  If you are presently in custody, include your identification number and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff      Name                    Onica Cox

              Street Address          6015 N 11th Street

              County, City            Philadelphia

              State & Zip Code        PA, 19141

              Telephone Number        (717) 894-4952

*Rev. 10/2009*

B.      List all defendants.  You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual.  Include the address where each defendant can be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1        Name  United Parcel Service, Inc.

                       Street Address  55 Glenlake Parkway

                       County, City  Atlanta, GA

                       State & Zip Code  GA, 30328

Defendant No. 2        Name

                       Street Address

                       County, City

                       State & Zip Code

Defendant No. 3        Name

                       Street Address

                       County, City

                       State & Zip Code

Defendant No. 4        Name

                       Street Address

                       County, City

                       State & Zip Code

## II.      Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.      What is the basis for federal court jurisdiction? *(check all that apply)*
         ☑ Federal Questions              ○ Diversity of Citizenship

B.      If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue?  Title VII of the Civil Rights Act of 1964 & The Americans with Disability Act

        The Genertic Information Nondiscrimination Act & The Age Discrimination in Employment Act

        Equal Pay Act (EPA)

C.      If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

## III.    Statement of Claim:

State as briefly as possible the facts of your case.  Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.      Where did the events giving rise to your claim(s) occur?   1 Electronic Drive, Horsham, PA 19044

_____

B.      What date and approximate time did the events giving rise to your claim(s) occur?   Nov. 12th 2020 around 3:30am

8am & 10pm same day. _____

_____

| What happened to you? | C.      Facts: On November 12, 2020, around 3:30am-8am, & 10pm orientation was completed after 8am, I took my ID picture and |
|---|---|

complated all applicabel forms, however, no ID, timecard or mention of my supervisors was provided.   When I returned for the night

shift, I was without ID, a timecard and unaware of who I was reporting to and the location.   Although, I completed five hours of paid

orientation, I was paid for only two hours.

Nov 12-20, 2020 Nick was responsible for training and was also verbally abusive, which lead to a temporary relocation when I made a complaint.

The younger and and more physically fit workers were giving preferential treatment, assigned truck durties first and respected.

Week of November 23rd or 30th, 2020 I was demoted and relocated to the recycles department near quality control and I had no idea until I was told.

Who did what?

During the week of Nov 23-Dec 10th, Bratton, who was a single worker in questioned me about my marital status, type of vehicle I drove

and mentioned daily, I would never be hired permanently by UPS.   Barry was obsessed with me and complimented me frequently.

My vehicle was vandalized in the parking lot. I reorted the incident to HR, who said I was responsible for all repairs.

On Dec 10, 2020, a formal complaint was made to Barry and Brandon, who suggested I mention the incdient to Joseph.

Joseph stopped by and asked about what I mentioned to Barry and Brandon, and suggested I report it.

Was anyone else involved?

On Dec. 11, 2020, the first shift supervisor mentioned I qualified for a part-time supervisory role as a new hire holding a degree.

The week of Dec 7, 2020, my timecard was deactivated several times weekly through Jan 25, 2021. My time was recorded and

a peice of paper and handed to Barry, which was suggested by Barry.

On Jan. 21, 2021, I reported being fired for reporting verbal & sexual harassment, vehicle vandalism and upaid wages to

Norman Brothers, Legal and Compliance and Charlene Thomas, Chief Diversity, Equity and Inclusion Officer

Who else saw what happened?

On Jan 22, 2021, I received a call to return to work and was told the firing was a computer mistake.

On Jan 25 2021, I returned to meeting requesting information about what I said in email to the corporate office. I was then relocated

to another PD, where within minutes I sustained a work-related injury. While in the medical room Joe walked in with a wrench in hand.

**IV.      Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. On Jan 25, 2021 after midnight, I sustained an ankle injury after falling on my back, while stepping from the stool.   I went home and requested to receive treatment in my county, near my home. The medical facility was unprofessional and insensitive and said I was okay to return to work despit the fact I could barley walk and had no feelings in my foot.

I had torn ligaments and severe tissue damage. I was advised not to see my own physician, which I did anyway.

I visited the medical facility the same day medical supervisor signed for treatment. Retured the next day and was harassed

and violently threatened with a hammer by the physical therapist. I left and never returned.  I've was so afraid for my life, I refused

to seek treatment and currently still experiencing ankle pain daily.

**V.      Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

UPS is liable for the actions of its employees relating to sexual harassment, verbal harassment during training, retaliation measures,

unwarranted demotion, exposure to hositle union workers in other departments, vehicle damage, unpaid wages, workers

compensation, lost future wages, medical expenses for current and future treatments, pain and suffering, humiliation, age discrimination,

body shaming, americans with disability act, age discrimination and employment act.

At this time, I'm requested $2.5MM in damages.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this __18__ day of __November_____ , 20 _21_ .

Signature of Plaintiff _Onica Cox_____

Mailing Address _6015 N 11th Street_____

_Philadelphia, PA 19141_____

_____

Telephone Number _(717) 894-4952_____

Fax Number *(if you have one)* _____

E-mail Address _coxonica@hotmail.com_____

<u>Note</u>:   All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

<u>For Prisoners</u>:

I declare under penalty of perjury that on this _____ day of _____, 20_____, I am delivering this complaint to prison authorities to be mailed to the Clerk's Office of the United States District Court for the Eastern  District of Pennsylvania.

Signature of Plaintiff: _____

Inmate Number _____

*Rev. 10/2009*                             - 5 -

 **ETHICSPOINT**®
Incident Management

Questions and Comments

Add Follow-Up Notes

Upload Files

Report Details

Print My Report

Join a Chat

Log Off

## ISSUE TYPE: HARASSMENT

### REPORT DETAILS

**Report Submission Date**
12/28/2020

**Reported Company/Branch Information**
Location OTHER
City/State/Zip: OTHER, PA, UNITED STATES )

**What is your relationship to UPS?**
Employee - Other

**Employee ID Number**
7130882

**Please identify the person(s) causing the concern:**
Markus (last name unknown) - quality control

**What is your relationship to the person(s) you are reporting?**
Peer

**Is management aware of this problem?**
Yes

**Have you previously reported this to anyone?**
Yes

**If yes, when and to whom was it previously reported?**
On December 10, 2020, Onica reported the matter to Barry (last name unknown), first line supervisor.
On December 11, Onica reported the matter to Brandon (last name unknown), second line manager.

**Have you previously attempted to resolve this problem?**
Yes

**If yes, when and in what way(s) have you tried to resolve it?**
On December 10, 2020, Onica made Barry aware.
On December 11, Onica made Brandon aware.

**Where did this incident or violation occur?**
1 Electronic Dr.
Horsham, PA 19044

**Please provide the specific or approximate time this incident occurred:**
during the week of November 9, 2020

**How long has this problem been going on?**
1 to 3 months

**How did you become aware of this violation?**
It happened to me

**Has anyone tried to conceal this issue?**
No

**How were you made aware of the Hotline?**
Personal Referral

**Details**
During the week of November 9, 2020, Markus made some sexual comments and gestures to Onica that made her feel uncomfortable. Markus' behavior happened plenty of times. Markus would approach Onica and start talking about his sexual experiences while looking at her in a very inappropriate way. Markus is an elder Caucasian man and makes Onica feel uncomfortable because of the way he looks at her or even talks to her.

On December 10, Onica talked to Barry about the incident.

On December 11, Onica talked to Brandon about the matter, and he told her that he was going to report the incident to Joe (last name unknown), warehouse night shift supervisor. Joe talked to Markus and since then, Onica has not heard any other inappropriate comment or gesture from Markus.

On December 18, Joe told Onica to speak to the HR department to file the complaint.

On December 24, Joe talked to Onica again to make sure that she had already filed the report.

**Follow-Up Notes**

There are no additional notes for this report.

**Follow-Up Questions/Comments**

**12/29/2020 9:28 AM posted by Organization**

Thank you for contacting the UPS Ethics Hotline about your recent concern. An investigation into the allegation(s) has started and can take up to 30 days to complete, however the investigator assigned will contact you and provide you with their contact information and confirm receipt of your concern, as well as clarify any necessary details for their investigation.

If you have additional information that you believe will assist in investigating your concern, you are always invited to provide any additional information to the allegation. You may also check the status of whether an investigation has been completed by calling the Help Line and providing your original case number.

**Chat Transcripts**

There are no chat transcripts for this incident.

 

Privacy Statement | Terms of Use

© NAVEX Global 2021. All rights reserved.

 **ETHICSPOINT®** Incident Management

Questions and Comments

Report Details

Print My Report

Log Off

ISSUE TYPE: HEALTH AND SAFETY

## REPORT DETAILS

**Report Submission Date**
12/9/2020

**Reported Company/Branch Information**
Location OTHER
City/State/Zip: OTHER, PA, UNITED STATES )

**What is your relationship to UPS?**
Employee - NonMgt - Operations

**Employee ID Number**
7130882

**Please identify the person(s) causing the concern:**
(first name unknown) (last name unknown) - (job title unknown)

**What is your relationship to the person(s) you are reporting?**
Other

**Is management aware of this problem?**
No

**Have you previously reported this to anyone?**
Yes

**If yes, when and to whom was it previously reported?**
Barry (last name unknown), supervisor.

**Have you previously attempted to resolve this problem?**
No

**Where did this incident or violation occur?**
1 Electronic DR
Horsham, PA 19044

**How long has this problem been going on?**
Once

**How did you become aware of this violation?**
It happened to me

**Has anyone tried to conceal this issue?**
No

**How were you made aware of the Hotline?**
Poster

**Details**
On December 5, 2020, Onica's car was crashed on the passenger side by an unidentified person. Onica informed the issue to Barry (last name unknown), supervisor, but he did not provide any solution. Onica talked to an African American female security guard (name and last name unknown), but she did not have any records or surveillance of the person who vandalized Onica's car. Onica was advised by the African American female security guard to call the police. Onica reported the incident to the police, and she was given the case number 2020-17561.

**Follow-Up Notes**
There are no additional notes for this report.

**Follow-Up Questions/Comments**
12/10/2020 3:28 PM posted by Organization
Thank you for contacting the UPS Ethics Hotline about your recent concern. An investigation into the allegation(s) has started and can take up to 30 days to complete, however the investigator assigned will contact you and provide you with their contact information and confirm receipt of your concern, as well as clarify any necessary details for their investigation.

If you have additional information that you believe will assist in investigating your concern, you are always invited to provide any additional information to the allegation. You may also check the status of whether an investigation has been completed by calling the Help Line and providing your original case number.
12/11/2020 11:28 AM posted by Organization
Thank you for filing your report. The investigation of this matter has been completed, and appropriate action has been taken. Due to the confidential nature of any investigation, findings must remain confidential and cannot be shared. If further incidents occur, please notify the Ethics Hotline or local management. We consider this matter closed.

**Chat Transcripts**

There are no chat transcripts for this incident.



Privacy Statement | Terms of Use

© NAVEX Global 2021. All rights reserved.

**coxonica@hotmail.com**

| | |
|---|---|
| **From:** | O'Nica Cox |
| **Sent:** | Thursday, January 21, 2021 9:28 AM |
| **To:** | CHARLENE THOMAS (cathomas@ups.com) |
| **Cc:** | Norman Brothers (nbrothers@ups.com) |
| **Subject:** | URGENT: Terminated for reporting sexual harassment at Horsham, PA Warehouse |
| **Attachments:** | EthicsPoint Vehicle Collision in UPS Parking Lot Report Details12112020.pdf; Sexul Harassment Report Details 12282020.pdf |

| | |
|---|---|
| **Importance:** | High |
| **Sensitivity:** | Confidential |

Good Morning Charlene,

It's my understanding you are the Chief Diversity, Equity and Inclusion Officer and that you will direct my below concern to Corporate HR.

I'm Onica Cox, hired on November 12th for a full-time night shift seasonal role (Monday – Friday 10:30pm-2:30am), reporting to Brandon on the midnight preload shift and Josh Smith in sort second shift (Monday – Saturday 4:00am-8:00am). During my first month on the midnight shift, two union workers made inappropriate sexual suggestions, which was reported. A verbal warning was giving to the first male (black) worker. The second (male Caucasian, a twenty-year union member) was a formal complaint made on December 28th via the ethics hotline. My first line, second line, and the night warehouse manager was informed of my experience and I was directed to file a complaint. I was informed that a HR representative would investigate the issue and call me with in thirty days. No calls from HR was received. I was informed verbally by the first shift and second shift supervisor that I was going to remain working after peak. The rehire paperwork was completed and I continued to report to work as usual for the second shift, as I was told I could no longer work two shifts. On Tuesday, January 19th, I reported to work on time, as usual, and noticed that my account was deactivated. I inquired to my supervisor, Imani, and she indicated that IT made a mistake. I reported the next day and experienced the same issue. I called corporate and left a message regarding the timecard issue. Joh Crossing returned my call and mentioned he was my manager and that I was terminated and it was legal. Opportunities to work on either shift was no longer available. My termination is a retaliation on the part of management that was securing the future of one of the guys in their "boys club". In addition to experiencing sexual harassment, I also experienced verbal assault from members of management. One Caucasian was removed for a week and returned to resume his inappropriate antics about my level of competency to build a wall in a truck.

What's shocking is my experience at this particular location. I have a college degree and was employed by several fortune 50 companies and was never fired. This is the first time ever during my work history that I've been fired (and on Biden / Harris Inauguration day), and for no specified reason, other than the indicated reason of reporting sexual harassment while on the job. It appears as a black woman, I'm not valued and for some bizarre reason, management believed I was going to comply with the sexual advances. I'm married and honor myself, my husband and our marriage. As mentioned previously, I've worked for several fortune 50 companies and have never experienced sexual harassment. The Horsham location a racist and toxic environment for black women. A vehicle was purchased to ensure lateness would never be an issue. The passenger side of my car was damaged and I was informed by HR that there are no surveillance cameras and that the loss is on me. Due to the decades of accumulated dust at this particular location, I was out for a day due to allergic symptoms associated with dust. I have given 150% of my time and now I am unemployed because I reported an illegal matter, which is a breach of company policy and state law. And union dues was deducted and no attention was given to this matter by Steve Gallager. I have to conclude that management (the boys club) value male Caucasians over black women. I was never valued or appreciated and now unemployed. Management fired me for speaking out and reporting the disgusting behavior of a union member.

I'm reaching out to you to see what can be done, since I was fired through no fault of my own, as I was defending human and constitutional rights, and my dignity and pride as a wife and mother.

Attachments

Vehicle Collision Report
Sexual Harassment Complaint

Regards,
Onica Cox

May 11, 2021

To whom it may concern,

This letter is intended to confirm that my client O'Nica Cox has discussed certain topics pertaining to her previous job in her therapy work with me. I have seen Mrs. Cox for weekly and bi-weekly Psychotherapy sessions from 11/11/2020 until presently. During that time Mrs. Cox discussed some of her work experiences working for UPS in her therapy sessions with me. Mrs. Cox reported that during one work week, a fellow co-worker made some comments to her which were sexual in nature, and comments about her body, which made her uncomfortable. She described feeling angry and disgusted after the incident, and stated that she reported the incident. Mrs. Cox also recounted some miscommunication toward the end of her tenure at UPS. She mentioned that she was moved to another department without much explanation, which she was displeased about and wondered if it may have been done as a punishment. She shared that her bar code was deactivated without any notice, and she was not able to clock in and out with it. Finally, Mrs. Cox discussed in therapy how she sustained a foot injury while at work and was told to seek an evaluation at a designated clinic. She reported feeling uncomfortable at the clinic, and also noted that one of the managers walked in to the health and safety room with a wrench in his hand which she reported made her feel threatened and uncomfortable. Please note that this letter is not intended to outline Mrs. Cox course of treatment, and treatment progress, but to confirm that Mrs. Cox discussed certain topics pertaining to her work during her therapy sessions.

Sincerely,

Andi Xhihani, PhD

Psychologist

Xhihani Psychological Services LLC



# EEOC Charge Position Statement Response to Dinsmore & Shohl LLP

## Written by O'Nica Cox
**May 9, 2021**

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

## Respondent' Message April 12, 2021

I. INTRODUCTION

Former Part-Time Seasonal Sorter/Pre-Loader, Onica Cox ("Cox"), alleges that she was discriminated against based on her age (46 years old), race (African American), and gender (female), and retaliated against for allegedly reporting sexual harassment, vehicle damage, and unpaid wages. As demonstrated below, Cox's allegations are without merit for several reasons. First, the Company took no adverse action against Cox based on her age, race, gender, or any other protected class. Second, UPS did not retaliate against Cox for allegedly reporting sexual harassment, vehicle damage, and unpaid wages. To the contrary, UPS conducted a prompt and comprehensive investigation of Cox's claims during her employment. Third, Cox voluntarily Third, Cox voluntarily resigned from the Company on March 4, 2021. As such, UPS could not have retaliated against as she alleges.

1 In submitting this Position Statement, UPS does not represent that this statement is meant to be all inclusive statement of every fact and defense related to Ms. Cox's Charge. Rather, UPS provides this Position Statement with the understanding that it reserves its right to produce additional evidence and documentation at a future date, UPS submits this Position Statement to the EEOC consistent with Rule 408 of the Federal Rules of Evidence for purposes of conciliation and/or settlement only. resigned from the Company on March 4, 2021. As such, UPS could not have retaliated against her as she alleges.

For all these reasons, as well as those developed more fully below, Cox's allegations are without merit. Accordingly, her Charge should be dismissed upon a finding of no probable cause.

## Claimant' Response May 9, 2021

Without dispute, I'm a Black woman over the age of 40, who resides in the United States of America as a citizen, and was employed at several Fortune 100 Companies, of which I contributed twenty-five years of taxes, and of course made time to achieve a Bachelor of Science in Public Administration, triple concentration at Medgar Evers College.

UPS hired a Black woman over the age of 40 as a package handler, in a male dominated role across the globe. I was overqualified for the position, and was more than eligible for a supervisory role in the warehouse and the corporate office.

The interview, confirmation of my hire, my supervisors, manager, HUB Division Manager and Preload Manager were all men. The majority of workers in PD 13 consisted of men. There were only two other women (Sal & Debbie?) and they were both white.

UPS has a history of discrimination, sexual harassment, unpaid wages cases by members of the organization and that information is available to the public.

For all the reasons listed above, my allegations are factual and can be proven, including UPS' known history of discriminatory practices against Black people and women, which can be found in court documents and in the media.

2

# O'Nica Cox vs United Parcel Service Inc.
## EEOC Charge No.: 530-2021-01544

**Respondent' Message April 12, 2021**

II. RELEVAN

FACTUAL BACKGROUND

A. UPS'S BUSINESS AND POLICIES (1 of 2)

UPS is an American multinational package delivery and supply chain management company. It is an equal opportunity employer and is committed to treating individuals fairly and recruiting, selecting, training, promoting, and compensating based on merit, experience and other work-related criteria. The Company does not discriminate based on disability, or other protected category. (Ex. A, Equal Opportunity Statement.)

UPS is dedicated to providing employees an opportunity to express their concerns and ideas. Employees are encouraged to report concerns, including discrimination and harassment, to the Company by speaking to their direct supervisor or manager and by using the Open Door process to speak to someone else in management, including their Human Resources manager. (Ex. B, Excerpts from UPS Policy Book.) Employees may also report concerns anonymously by using the Ethics Hotline. (Id.)

**Claimant' Response May 9, 2021**

On November 12th around 3am, a female security guard asked to check my bag to ensure I didn't have a gun, although no alarms rang after walking through the metal detector. I was repeatedly over checked until the end of December.

Orientation(Danielle and Ed (senior member of management) was paid training scheduled for 4.5. I was only paid for two hours. After completing orientation and taking my ID picture and completing other relevant documents, I was not issued an employee ID or notified who I would be reporting to. A barcode card is required to clock in and out of the HUB, that was not issued either. The machine was outdated and recorded me as a non-employee and inconsistently recorded hours worked. Randy Barnes in the training department directed me to the HUB. Josh Smith was nowhere available when I was scheduled to start working on the second shift.

I was the only Black woman over forty working in PD13. There were two other Caucasian women. Most of the men working in the PD were young.

Many of my concerns was expressed to Barry, Brandon, Guarino, Imani, and a few union members. No change occurred regarding how I was treated on a daily basis.

3

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

II. RELEVAN

FACTUAL BACKGROUND

A. UPS'S BUSINESS AND POLICIES (2 of 2)

UPS is an American multinational package delivery and supply chain management company. It is an equal opportunity employer and is committed to treating individuals fairly and recruiting, selecting, training, promoting, and compensating based on merit, experience and other work-related criteria. The Company does not discriminate based on disability, or other protected category. (Ex. A, Equal Opportunity Statement.)

UPS is dedicated to providing employees an opportunity to express their concerns and ideas. Employees are encouraged to report concerns, including discrimination and harassment, to the Company by speaking to their direct supervisor or manager and by using the Open Door process to speak to someone else in management, including their Human Resources manager. (Ex. B, Excerpts from UPS Policy Book.) Employees may also report concerns anonymously by using the Ethics Hotline. (Id.)

**Claimant' Response May 9, 2021**

UPS is a multicultural diverse organization that has created institutionalized barriers that prevent Black people and women from succeeding in several locations across the nation and the globe. For example,

https://www.seattlepi.com/seattlenews/article/Local-woman-wins-sex-discrimination-case-against-10811443.php

https://inthesetimes.com/article/ups-has-a-racism-problem

https://abc11.com/ups-iteam-investigation-drivers/2674985/

https://www.eeoc.gov/newsroom/ups-freight-pay-120000-settle-eeoc-sex-harassment-and-retaliation-suit-0

https://www.eeoc.gov/sites/default/files/migrated_files/eeoc/litigation/briefs/clark1.txt

https://www.msn.com/en-us/news/us/horsham-council-condemns-racial-violence-discrimination/ar-BB15SOIK

https://www.huffpost.com/entry/ups-racial-discrimination-lawsuit-ohio_n_5c8a5682e4b038892f4b04eb

https://www.eeoc.gov/newsroom/ups-pay-49-million-settle-eeoc-religious-discrimination-suit

https://www.pa.gov/guides/reporting-workplace-sexual-harassment-in-pennsylvania/

https://www.horsham.org/pview.aspx?id=43744: Statement Condemning Racism & Discrimination - Horsham Township PA

4

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

B. COX'S EMPLOYMENT WITH UPS

On November 12, 2020, UPS hired Cox as a Seasonal Full-time Sorter and Loader (Combo) at its Willow Grove facility located at 700 Electronic Drive, Horsham, Pennsylvania 19044. Cox was hired to support the Willow Grove facility during its holiday peak season from November 1, 2020 to January 17, 2021 ("Peak Season").

Pertinent to Cox's employment, UPS created a Seasonal "Combo" position by combining two (2) Part-time jobs ("Sorter" and "Loader") into a single Full-time position to meet the various production needs of the Willow Grove facility. Employees serving in this Combo Position reported to two (2) different operational managers, depending on the duties they were performing. Specifically, they reported to Preload Manager, John Crossin ("Crossin") while performing Sorter duties (i.e., sorting packages onto different belts) and the Hub Manager while performing Loader duties (i.e., taking packages off the belt and loading them in the correct truck). Typically, Combo Sorter/Loaders reported to the Preload shift from approximately 10:30 PM – 2:30 AM and the Hub shift from 4:00 AM to 8:00 AM.

Near the end of Peak Season, UPS managers evaluated Seasonal employees' performance and offered permanent positions to a select number based on operational needs. However, as a matter of course, all Seasonal employees were terminated on January 17, 2021 and any employees returning after Peak Season were subsequently re-hired into their respective new positions. Contrary to Cox's allegations, she was not offered a permanent Supervisor or Package Handler position during her first week of employment. In reality, Cox was still in training during her first week of employment and thus had no opportunity to demonstrate her aptitude for either position. Nevertheless, at the end of Peak Season and upon evaluation, UPS did decide to re-hire Cox as a Loader/Unloader on the Hub shift.

**Claimant' Response May 9, 2021**

I was hired on November 12, 2020, completed orientation, took a picture ID, which was not provided, or a barcode card, or notified of my respective managers in both departments.

HR indicated that I was scheduled 11pm-2am on the first shift and second shift 4am-8am, which changed during my employment. Barry asked that I come in at 10:45pm, then 10:30pm. There were times I worked pasted 2:30am. In Preload I was marked late for showing up at 4am, when Josh Smith knew I was working two shifts.

**First Shift** HUB Managers, Barry Wimberly, Brandon Thornton, Joe Guarino is the Willow Grove Hub Midnight Sort Manager, Jack Chudzinski is the Willow Grove Hub Division Manager. I worked Tue-Fri and one occasional Saturday and I was not paid for the hours worked. I worked more than four hours during peak until second week in Jan.

**Second Shift** Preload Managers, Imani, Dave, Josh Smith, and John Crossin, Preload Operations Manager. I worked Mon-Sat. Therefore, I worked more than forty hours a week on most weeks. View attachments: pay stubs. It was a fellow union member that brought it to my attention that there are inconsistent payroll issues at UPS and suggested I start documenting my hours and taking screenshots of the HUB and Preload timesheet machines. In my mind I couldn't believe a fortune 500 company was capable of such things., but as you will see on my payroll documents, it was true.

I was evaluated throughout the peak season by Barry. I received two verbal offers for a permanent part-time role and part-time supervisory role by both departments: Brandon and Imani. I was told that the supervisory role could take thirty or more days based on my performance because I qualified while holding a Bachelor of Science degree. (attachment)I was not in training, I was demoted to the Recycles Department and unaware until Scott mentioned that I was working in another department.

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

C. COX'S VEHICLE DAMAGE ALLEGATIONS

On December 5, 2020, a month after Cox was hired, an unknown person reportedly damaged the passenger side of her vehicle in the UPS parking lot. Upon discovering the damage, Cox spoke with a third-party security guard who advised Cox to file a report with the Horsham Police Department. Shortly thereafter, Cox filed a police report (Case No. 2020-1756) and contacted her insurance company. On December 9, 2020, Cox called the UPS Ethics Hotline to report the damage to her vehicle and the lack of security surveillance in the parking lot and UPS promptly investigated Cox's concern. Due to limited resources, employee parking lots are not equipped with surveillance and thus employees are encouraged to file a formal report with the local police department. UPS followed up with Cox on December 11, 2020, and explained that car related damage occurring on UPS property does not fall under the purview of UPS and UPS Security. Cox was told to maintain contact with the local police department and her insurance company, and that if she were to obtain any proof of who damaged her vehicle, she could submit that information to the Ethics Hotline.

**Claimant' Response May 9, 2021**

Correction, I was hired on November 12th, so December 5th was not thirty days in to constitute a month on the job. My vehicle was vandalized after I was verbally assaulted by Nick, sexually harassed by an unknown Black union member, demoted from loading trucks to the Recycles Department, two feet from Bratton in Quality Control,  who sexual harassed me as well. I was unware of being demoted until Scott, who works in Recycles mentioned it to me. He normally arrives after 11am, thirty or more minutes after I arrive, so I was within distance of Bratton, who asked questions regarding my marital status, how I commute to work, what type of car I drove and what I paid for it. I was asked those questions in front of other union members and management, so many people were aware.

Prior to the vandalism of my vehicle, I made a verbal complaint to Barry about Nick, who was removed from PD 13 to PD 11. I also made it clear to the Black union member that I was happily married, honored my myself, husband and my marriage, and have no interest in anyone at UPS. I don't date, hookup, or swing with anyone ever. Therefore he needs to be careful of his comments and observations of a married woman.

Bratton was professional until after he witnessed me confronting the Black male union member about his sexual comment. Which would never of occurred if I was loading trucks. Scott, the sole member in Recycles was upset at me because I reported Nick and he was temporarily moved to another PD. All these guys are friends and treated me indifferently when I started speaking up for myself and was zero tolerant of their behavior. It was obvious, I was working and being harassed by members of a "boys club".

Due to the inclement weather and the fact that it was pitch dark, I was unable to capture the person who collided into the passenger side of my car, of which I'm not liable.

# O'Nica Cox vs United Parcel Service Inc.
### EEOC Charge No.: 530-2021-01544

**Respondent' Message April 12, 2021**

D. COX'S HARASSMENT, HOSTILE WORK ENVIRONMENT, AND RELATION ALLEGATIONS (1 of 3)

On December 10, 2020, Cox verbally reported to her Part-time Supervisor that an "elder Caucasian man" named "Bratton" made sexual comments and gestures to her during the week of November 9, 2020. Cox identified Part-time Package Handler, Mark Bratton ("Bratton"), as the alleged harasser and UPS ensured that her concerns were reported to the Ethics Hotline for investigation.

UPS launched a prompt and thorough investigation into Cox's concerns. Bratton denied making any such comments and stated that he was not aware of the alleged incident. Bratton, who has been employed by UPS for twenty (20) years without incident, explained that he generally keeps to himself and does not speak to other employees. Two (2) female workers in the same work area as Bratton and Cox were interviewed and confirmed that no one in their work area made any inappropriate comments or made them feel uncomfortable. Throughout its investigation, UPS was unable to substantiate Cox's allegations against Bratton. All employees interviewed characterized Bratton as a quiet, honest employee who often reports inappropriate behavior. Indeed, Bratton has been employed by UPS for twenty (20) years without any reports of harassment, or otherwise, against him.

Cox was interviewed in the presence of UPS Manager Guarino and a Union Steward. Despite her allegations to the contrary, the interview was independently conducted. During her interview, Cox did not mention unpaid hours, timecard issues, or age discrimination. At the conclusion of the interview, Cox agreed that, pending the outcome of the investigation, she would work in a different work area from Bratton and the members of management with whom she took issue.

**Claimant' Response May 9, 2021**

On November 9th, I wasn't employed by UPS. I called the Ethics Point Hotline and provided accurate dates of incidents, as I was documenting each incident on my phone, to various family members, and friends. The Third party vendor, which is located in another country made many mistakes, which I corrected. I'm not responsible for the inaccuracies of the vendor selected by UPS.

How can UPS launch a thorough investigation just by asking Bratton if he did it? And why would Bratton be truthful about his behavior? Who were the two females that spoke so highly of Bratton? Where they there when the incidents occurred? There are only two other females in the PD and both are white and are designated to load trucks. Sal (Sally) and Debbie / Debra / Denise(?) are the Caucasian women, who reports in after 11am to start loading, they also remained loaders, while I worked in Recycles near Bratton. It's impossible for UPS to substantiate Bratton's behavior unless Bratton speaks the truth. Bratton is a Caucasian twenty-year union veteran and a member of the "boys club" so I can see how he would be viewed  as indicated.

I mentioned everything that was reported in the letter to corporate. The barcode card being deactivated (it was also replaced and was still not working correctly) several times was mentioned to Barry and Brandon, Guanino, and Rich, Scotts supervisor in Recycles, who went in and deactivated my card so I could clock out. All hours not paid was reported to Barry, who said he would ensure I was paid for all hours worked, which did not occur. Barry said to write down my hours on a sheet of paper so I could be paid, since the card was mostly deactivated.

7

# O'Nica Cox vs United Parcel Service Inc.
### EEOC Charge No.: 530-2021-1544

**Respondent' Message April 12, 2021**

D. COX'S HARASSMENT, HOSTILE WORK ENVIRONMENT, AND RELATION ALLEGATIONS (2 of 3)

Management is unaware of any similar formal or informal complaints of racist or toxic environment at the Willow Grove facility. Accordingly, UPS did not substantiate Cox's hostile work environment concerns.

With respect to Cox's retaliation allegations, UPS interviewed Crossin regarding the alleged termination of Cox. Crossin explained that all Seasonal employees were terminated from the system on January 17, 2021, and that Cox was not re-hired to serve on the Preload Shift, which he supervises. Of significance, Crossin was unaware of Cox's harassment allegations prior to his call with Cox on January 20, 2021. As such, UPS determined that Crossin did not retaliate against Cox for making a report of harassment. Indeed, this was the first and only interaction between Crossin and Cox. Beyond that, Cox was in fact re-hired to the Hub shift.

At the conclusion of the investigation, UPS was unable to substantiate Cox's allegations of harassment, hostile work environment, or retaliation.

**Claimant' Response May 9, 2021**

Barry did not record and report the correct hours worked consistently when the barcode card wasn't working. I was demoted as a truck loader to a different department without cause and placed in proximately of Bratton, where the incident occurred when I was the only person on Recycles before 11/11:15pm and when Scott was pushing loaded carts, while I remained near Bratton. There was no complaints about my work ethic or ability to comply with any organizational policies or procedures or city, state, or federal laws over my twenty-five year work history. There was consistent harassment from the men in PD 13 when Nick returned to the PD.

Let's be clear, I worked in a dominantly male warehouse, where I experienced discrimination by men. It was apparent that it was very normal to harass women at Willow Grove. And as mentioned in a previous slide the State of Pennsylvania is aware of the treatment of Black people and the volume of sexual harassment cases in the state, across the nation and at UPS.

Furthermore, just because management says "it isn't so" doesn't mean "it isn't so. I was verbally and sexual harassment at Willow Grove by members of the union. Barry, who is in management saw it and didn't follow protocol and discipline the Black guy for is behavior. UPS doesn't want another lawsuit and will never hold these men accountable for their unlawful behavior.

8

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-1544**

**Respondent' Message April 12, 2021**

D. COX'S HARASSMENT, HOSTILE WORK ENVIRONMENT, AND RELATION ALLEGATIONS (3 of 3)

Management is unaware of any similar formal or informal complaints of racist or toxic environment at the Willow Grove facility. Accordingly, UPS did not substantiate Cox's hostile work environment concerns.

With respect to Cox's retaliation allegations, UPS interviewed Crossin regarding the alleged termination of Cox. Crossin explained that all Seasonal employees were terminated from the system on January 17, 2021, and that Cox was not re-hired to serve on the Preload Shift, which he supervises. Of significance, Crossin was unaware of Cox's harassment allegations prior to his call with Cox on January 20, 2021. As such, UPS determined that Crossin did not retaliate against Cox for making a report of harassment. Indeed, this was the first and only interaction between Crossin and Cox. Beyond that, Cox was in fact re-hired to the Hub shift.

At the conclusion of the investigation, UPS was unable to substantiate Cox's allegations of harassment, hostile work environment, or retaliation.

**Claimant' Response May 9, 2021**

I reported to Imani, who reported to Dave, who reported to Josh Smith, who reported to Crossin. Imani said she placed my name on the list be to remain on her team. I received verbal approvals to remain on both shifts, however, as a union member, I was only permitted to select one shift. When I returned to HR on January 8th and reapplied and selected HUB, so if needed, I would have sufficient time to report to another job in the early morning. After completing the first shift, I reported to Preload, where Imani knew I selected the HUB and said she was disappointed because she fought for me. When I actually thought about it, I preferred Preload as there was no harassment incidents and the team was more accommodating. Understanding that I returned on Monday and changed the reapplication to Preload. If Crossing didn't approve my staying in his department, shouldn't Imani be aware of that; and why would she be concerned that I selected the HUB. I have the text that indicates my name was submitted to stay permanently.

I have Crossin' voicemail, dated January 20th stating that both departments decided not to keep me, after I completed the reapplication. How is it possible for Crossin to speak on behalf of the HUB? Based on Crossin' voicemail, I was fired on Jan 20th without reason. Management and union members in the HUB was aware that I filed several complaints, including Imani in Preload. View attachments: text and voicemail)

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

## Respondent' Message April 12, 2021

### 1. COX'S RE-HIRE TO PERMANENT POSITION (1 of 4)

While Cox's sexual harassment claim was pending investigation, she transitioned from a Seasonal to Permanent position. Since Cox served as both a Sorter and Loader during Peak Season, she was eligible to be re-hired in either position. Based on her performance and the facility's operating needs, it was requested that Cox be kept on the Hub shift as a Loader. As such, Cox would not return to the Preload shift as a Sorter. However, on January 18, 2021, Cox was inadvertently re-hired on the Preload shift due to a clerical error. Consequently, when Cox reported to the Preload shift, she learned that she was not expected to return after Peak Season. Cox reached out to HR and Preload Manager Crossin on or around January 20, 2021 to verify her employment status. Preload Manager Crossin called Cox and left her a voicemail explaining that she was not being retained by the Preload shift. Ten (10) minutes later, Cox returned Crossin's call and was immediately abrasive. Despite having never met Crossin, Cox accused him of being a "racist." Cox maintained that she was being kept on permanently by UPS, to which Crossin instructed her to speak with Joe Guarino about her status on the other shift. Cox then proceeded to harangue Crossin about her vehicle damage and pending sexual harassment claim, neither of which Crossin was aware of at the time. Crossin again explained that she was Seasonal on the Preload shift and suggested that she contact Guarino regarding her employment status. Cox tersely responded that she was calling her lawyer and hung up. This was the first and only interaction Crossin ever had with Cox.

## Claimant' Response May 9, 2021

This is the first time I'm hearing that "Based on her performance and the facility's operating needs, it was requested that Cox be kept on the Hub shift as a Loader". It was my understanding based on my conversations with Brandon, Guarino, Imani and another part-time supervisor(female Caucasian, who recently returned from maternity leave) who evaluated my performance(in the trucks and was extremely helpful), weekly said that it was my decision to make. The Caucasian part-time supervisor was extremely professional and helpful during my transition. I went to HR and indicated I was there to reapply for a permanent role and according to the processor, my name wasn't listed. A call was made to receive Guarino's approval.

When I reported to Preload on the 19th, my employee ID was terminated, same as when I reported to the HUB on the 25th. My Barcode card was not efficiently working at all, however, after receiving a voicemail and email from Chudzinski, I assumed my clock issues would no longer be a problem, which was not the case on the 25th. In addition, I was not inadvertently hired in Preload. I was told to select a department and I did. My last day in the HUB was on the 15th and that's how I wanted it, since I returned to HR and requested to be placed in Preload than HUB and I was obliged. Check the system for applications submitted with my name. If it was not procedure for me to choose, why was it permitted by members of HR? It was my decision. I believe Guarino was upset and spoke to Crossin, and that's why Crossin was so confident in saying neither department wants to keep me.

Listen to Crossin' voicemail. Provide proof that I called Crossin a racist? I was directed to contact Guarino, since Crossin' voicemail clearly indicated neither department was interested in keeping me. Crossin is the liar, as his voicemail will point out. I called Crossin because his voicemail made no sense based on the conversations I had with Imani.

As a Black woman over 40 how was I going to support myself, now that I'm unemployed for no reason. This looks like systemic oppression by Caucasian men in power.

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

## Respondent' Message April 12, 2021

1. COX'S RE-HIRE TO PERMANENT POSITION (2 of 4)

The following day, January 21, 2021, Cox emailed UPS alleging that her perceived termination was retaliation for reporting sexual harassment. Cox's email was submitted for a prompt investigation. UPS clarified the status of Cox's employment. HR discovered the miscommunication between the Preload and Hub operations, and the Hub Manager advised that Cox was supposed to return as a Loader/Unloader on the Hub Shift. The Hub Manager reached out to Cox by telephone and left her a voicemail apologizing for the confusion and explaining that Cox should return to the Hub shift on Monday, not the Preload shift. On January 22, 2021, Cox emailed UPS confirming her receipt of the voicemail and requesting a letter on company letterhead authorizing her return. UPS responded that nothing was required for her to return to work and advised Cox to come into work on Monday, January 25, 2021.

## Claimant' Response May 9, 2021

Per Crossin' voicemail, I was terminated by both departments. UPS clarified in writing, however, my employee account was deactivated since I could not clock in or out on the 19th and 25th of January. Review the attached screenshots, including one found dated December 15th where my hours was incorrectly reported. I was not supposed to return to the HUB, as I was no longer interested in being harassed and treated indifferently based on my age, race, sex, and determination to succeed in a male dominated role. Confirmation of employment was necessary, especially after my experiences in the HUB, listening to Crossin' voicemail and speaking to him on the phone.

Crossin called and terminated me based on a call I made to corporate Atlanta the day before. I called corporate inquiring about my status and that made him and HUB supervisor upset. That's why I proceed to send an email to the corporate office about what I experienced at Willow Grove. I reported experiencing verbal and sexual harassment, unpaid wages, unfair treatment, being demoted, and vehicle vandalism – and none of it is a lie.

One call changed my financial situation and it all stems from system racism. I went from being a part of the working class to poverty. If I'm unemployed, I don't have the means to support myself financially, which means I can't pay my rent, continue paying for the car I bought for the job, which would deem me homeless, resulting from the mentality of Caucasian men in power at UPS.

# O'Nica Cox vs United Parcel Service Inc.
## EEOC Charge No.: 530-2021-01544

**Respondent' Message April 12, 2021**

1. COX'S RE-HIRE TO PERMANENT POSITION (3 of 4)

The following day, January 21, 2021, Cox emailed UPS alleging that her perceived termination was retaliation for reporting sexual harassment. Cox's email was submitted for a prompt investigation. UPS clarified the status of Cox's employment. HR discovered the miscommunication between the Preload and Hub operations, and the Hub Manager advised that Cox was supposed to return as a Loader/Unloader on the Hub Shift. The Hub Manager reached out to Cox by telephone and left her a voicemail apologizing for the confusion and explaining that Cox should return to the Hub shift on Monday, not the Preload shift. On January 22, 2021, Cox emailed UPS confirming her receipt of the voicemail and requesting a letter on company letterhead authorizing her return. UPS responded that nothing was required for her to return to work and advised Cox to come into work on Monday, January 25, 2021.

**Claimant' Response May 9, 2021**

It's my understanding that in the United States of America, we have government agencies in place with rules and regulations that appear to effectively govern the nation. However, our government is not a person, it's a system! An old out dated Jim Crow system that's in need of change. Meaning although legislatures have laws in place to protect the people (some more than others), it's the people with wealth, in power, who exercise their authority on other people based on cultural norms, traditions and practices, ignorance, misconceptions, stereotyping, etc. Slavery and the trauma of slavery is intergenerational, just like Racism and slave owners and the messages that was taught to their culture and children on how to view people, who are different. The message was passed down just like generational poverty in the Black culture. And those people and succeeding generations, are members of the legislative body, are employed in every business sector and industry in America. Reside in communities across the nation, are entrepreneurs, have managerial roles in all sectors of business and are advertently and inadvertently pushing their own philosophies of how to view and treat Black people. What's happened to George Floyd and many others over the course or centuries is not a coincidence, it was a system of hate created to separate the haves from the have not. Historically, you can review the statistics and see that the progress of Black people successfully integrating and generating wealth in America is relatively slow. Just like what happened to me at UPS. The old Jim Crow laws and way of thinking is still lodged in the mentality of many white men and women.

# O'Nica Cox vs United Parcel Service Inc.
## EEOC Charge No.: 530-2021-01544

**Respondent' Message April 12, 2021**

1. COX'S RE-HIRE TO PERMANENT POSITION (4 of 4)

The following day, January 21, 2021, Cox emailed UPS alleging that her perceived termination was retaliation for reporting sexual harassment. Cox's email was submitted for a prompt investigation. UPS clarified the status of Cox's employment. HR discovered the miscommunication between the Preload and Hub operations, and the Hub Manager advised that Cox was supposed to return as a Loader/Unloader on the Hub Shift. The Hub Manager reached out to Cox by telephone and left her a voicemail apologizing for the confusion and explaining that Cox should return to the Hub shift on Monday, not the Preload shift. On January 22, 2021, Cox emailed UPS confirming her receipt of the voicemail and requesting a letter on company letterhead authorizing her return. UPS responded that nothing was required for her to return to work and advised Cox to come into work on Monday, January 25, 2021.

**Claimant' Response May 9, 2021**

As indicated previously, Crossin' voicemail and phone is contrary to the so-called investigation. In regards, to Jack Chudinski' voicemail, I'm not sure that's him, unless his son inherited his role. The voice on my voicemail is of a much younger man compared to the picture I have of Jack on the pamphlet I was given. I was supposed to return to the department I selected, which concerns me that there is a serious violation going on in Human Resources and Management. I returned to HR and requested withdrawal from the HUB and processing for Preload instead. There was no miscommunication. I was being forced to stay in the HUB when I had no desire. If HR and the system was organized, it would have clearly shown two reapplications processed days apart, of which both were signed by me. How can there be any confusion about what appears on the HR system. The "good ole boys" were clear about their intentions concerning me.

13

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

2. COX'S WORKPLACE INJURY (1 of 4)

Less than one (1) hour into her shift on January 25, 2021, Cox reportedly fell off a load stand and sustained an injury to her left ankle. As such, Cox was escorted to the administrative office by the Safety Supervisor, who evaluated Cox's injury and advised her to ice and elevate her ankle to prevent swelling. Cox refused transportation to seek medical treatment and was ultimately escorted by UPS to her vehicle to return home for the day. UPS advised Cox to contact the Safety and Risk Management Supervisor if she required medical attention so that Cox could be evaluated by one of UPS's Workers' Compensation panel physicians. At no point did Guarino, or any other employee, enter the office with a wrench in hand. In fact, hand tools of any variety are seldom (if ever) used by members of UPS management.

The following day, January 26, 2021, Cox emailed the Safety and Risk Management Supervisor, Donna Knox ("Knox") at 3:42 PM requesting the name and address of the UPS approved facility she needed to visit to get an x-ray of her ankle. (Ex., H, Cox/Knox Email). A few hours later, Knox responded with the address and indicated that she would schedule an appointment the following day. (Id.). Knox then called Cox twice and left a message requesting to speak to her. The following day, Knox sent Cox a text message with the time and address of her appointment, and asked her to respond confirming receipt. When Cox did not respond, Knox called again and left another message. Without hearing back from Cox, Knox went to the appointment at 12:00 PM and waited for approximately 45 (forty-five) minutes but Cox failed to show up.

**Claimant' Response May 9, 2021**

I returned to work and noticed my employee ID was deactivated in the system. On the 19th of January when I arrived to Preload my account was found deactivated. Ask UPS to provide proof I was still an active employee on the 25th of Jan I returned to the HUB, as it was six days later and my barcode card was still inactive. I was not able to clock in or out of the HUB. The meeting with Guarino, security, the union representative was documented. Oh, and let's not talk about the condition of the warehouse: unsanitary, filled with decades of dust and grime, no a/c or heating.

I was in so much pain and concerned for my life that I waited a day before reaching out to Knox for additional providers located in Philadelphia. In addition, I asked for the information while I was in the office and I was told to call the office next day. Did you see the original email sent to Knox? I saw my own doctor, who at this point, I trusted way more than the UPS provider. After I sustained the injury and was sitting in the office it was hinted that I deliberately injured myself to collect workers compensation, which in my eyes would be stupid. Why would I do such a thing and when did I ever exhibit such a deceptive character? For someone who comes from a family of tax payers, and has put in twenty-five years of taxes, there is no way I would ever deliberately hurt myself to live temporarily in poverty. A list of local providers was received two days later. Although Knox offered to pick me up and take me to the doctor, at this point, after experiencing such a toxic environment, I declined. There was absolutely nothing ethical about UPS and its members. Not even at the Urgent Care Center where the medical assistant (who was kept looking at me and laughing), registered nurse (who mocked my accent and asked if I was from the islands?), x-ray technician (who deliberately banded my ankle wrong), and the therapist (who was passing a hammer to another patient) was extremely unprofessional.

14

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

## Respondent' Message April 12, 2021

2. COX'S WORKPLACE INJURY (2 of 4)

Less than one (1) hour into her shift on January 25, 2021, Cox reportedly fell off a load stand and sustained an injury to her left ankle. As such, Cox was escorted to the administrative office by the Safety Supervisor, who evaluated Cox's injury and advised her to ice and elevate her ankle to prevent swelling. Cox refused transportation to seek medical treatment and was ultimately escorted by UPS to her vehicle to return home for the day. UPS advised Cox to contact the Safety and Risk Management Supervisor if she required medical attention so that Cox could be evaluated by one of UPS's Workers' Compensation panel physicians. At no point did Guarino, or any other employee, enter the office with a wrench in hand. In fact, hand tools of any variety are seldom (if ever) used by members of UPS management.

The following day, January 26, 2021, Cox emailed the Safety and Risk Management Supervisor, Donna Knox ("Knox") at 3:42 PM requesting the name and address of the UPS approved facility she needed to visit to get an x-ray of her ankle. (Ex., H, Cox/Knox Email). A few hours later, Knox responded with the address and indicated that she would schedule an appointment the following day. (Id.). Knox then called Cox twice and left a message requesting to speak to her. The following day, Knox sent Cox a text message with the time and address of her appointment, and asked her to respond confirming receipt. When Cox did not respond, Knox called again and left another message. Without hearing back from Cox, Knox went to the appointment at 12:00 PM and waited for approximately 45 (forty-five) minutes but Cox failed to show up.

## Claimant' Response May 9, 2021

When I walked into the therapist section of urgent care, I saw three white and three black males. I was the only female. I have nerve and tissue damage and I was told to return to work, where I would have to drive for thirty minutes, look for park, and walk through a massive parking lot, through security and then the warehouse to do light work? Regarding the appointment Knox scheduled, I never told Knox to schedule anything, nor did I confirm I was going. Prove I provided availability and said I would be there?

As previously indicated, it should be evident why I reacted the way I did. If not, I will refresh your memory. A Black woman over forty survived working as a Package Handler during peak season, was also offered a permanent role in both departments, which was reneged. Although hesitant to return to work, I reported to PD 13 loaded for a few minutes then was told to meet with Guarino, and I was uncomfortable because again, I was in a room with men. Why was there no women present at this meeting? I disclosed what was sent in email, and at that point felt concerned for my life. After the meeting, I was relocated (disciplined in my eyes) to PD 9. I met with my new supervisor and manager and was directed to start working in the truck which was almost fully loaded. I was moved to an adjacent truck that had the roller down with one Black male (Lamar) on the left side standing on a stool while working. After a few minutes, I was given a stool, which I stood on. When I reached the top of the wall, I stepped down and fell. The stool actually felt like it was leaning on the left side where I was stepping down.

15

# O'Nica Cox vs United Parcel Service Inc.
### EEOC Charge No.: 530-2021-01544

**Respondent' Message April 12, 2021**

2. COX'S WORKPLACE INJURY (3 of 4)

After Cox missed her appointment, Cox emailed Knox at 3:15 PM requesting the address of a UPS approved facility closer to her residence. Cox's email attached a note from an Urgent Care facility excusing her from work until February 1, 2021. (Ex. C, Urgent Care Note). Contrary to Cox's allegations, Knox promptly arranged for Cox to visit an office in Philadelphia, Pennsylvania, in close proximity to Cox's residence, the following day.

On January 28, 2021, Knox accompanied Cox to the doctor's office for her workplace injury and authorized her treatment. After Cox saw the doctor, the doctor gave Cox and Knox a copy of a new doctor's note with temporary restrictions, but did not place Cox out of work as the Urgent Care note stated. Rather, the doctor returned Cox to work with modified duties (i.e., non-physical, administrative duties). Despite this, Cox repeatedly told Knox and the doctor that she was not returning until February 1, 2021, per her note from Urgent Care. Knox tried to explain to Cox that the Urgent Care facility she visited was not one of UPS's providers, and that she was expected to return to work with modified duties. Knox assured Cox that UPS Security would meet her at in the parking lot and escort her into the building safely.

**Claimant' Response May 9, 2021**

Being transported to the hospital was absolutely not happening and for several reasons. Especially after being aggressively targeted by members of management and the union, who happened to be men. Nothing changed. Everyone that targeted me -- that placed me in this predicament was still on the job. A few days had passed since sending an email to Corporate Atlanta, so I was not going to a hospital during a pandemic without my family and a lawyer being present. How would someone investigating a post incident know whether or not Guarino had a wrench on hand? When all Guarino, when asked, has to say is no. And the other male Caucasian (Pat) in the room, he said I was lying, right? I reported racism, unpaid wages, discrimination, sexual harassment, and my vehicle being vandalized at the Willow Grove Warehouse in Horsham, PA, and management was going to be happy with me saying that? Yeah, I just happened to be surround by ethical, honest, Caucasian men who would never harm a Black woman? Well, I somehow fell off a stool that I used on many occasions in different PD's across the warehouse. After I fell and made my way of out the truck, down stairs and across the warehouse, Guarino walked in and out of the office with my new supervisor and manager, the union representation and security after learning I fell. He returned a few minutes later with a wrench in hand swinging indicating "package handling" isn't for everyone. And indicating, I can either leave now or after 3.5 guaranteed hours. The only people in the office was me and another male Caucasian name Pat.

# O'Nica Cox vs United Parcel Service Inc.
## EEOC Charge No.: 530-2021-01544

**Respondent' Message April 12, 2021**

2. COX'S WORKPLACE INJURY (4 of 4)

Cox did not follow-up with UPS or return to work after her January 28, 2021 doctor's visit. On February 9, 2021, HR Manager Lucia Peyton followed up with Cox with a letter regarding her employment status and the on-going investigation of the concern(s) Cox had filed. (Ex. D, Employment Status with UPS Letter). Peyton clarified that on or about January 18, 2021, Cox's seasonal work in the preload ended, but her position in the HUB continued. (Id.). Regarding Cox's workplace injury, Peyton also requested an update on her return to work status and directed Cox to UPS's formal accommodation process if she had any medical restrictions. (Id.). Finally, Peyton assured Cox that it was in the process of investigating her concerns. (Id.). UPS confirmed that the letter was delivered to Cox on February 10, 2021. (Ex. E, Proof of Delivery). Cox did not respond to the letter, nor did she contact Peyton regarding her return to work status. Having yet to receive any response from Cox, on February 25, 2021, Peyton sent Cox a second letter following up on the status of her employment and requesting a response from Cox by March 8, 2021. (Ex. F, Second Employment Status with UPS Letter).

On March 4, 2021, Cox called Peyton to confirm that she was not returning to UPS. Before Peyton could respond, Cox hung up the phone and did not follow up with HR, or any other member of UPS management. Consequently, Peyton sent Cox a letter on March 8, 2021, confirming Cox's phone call on March 4, 2021, and her voluntary resignation status effective March 4, 2021. (Ex. G, Final Employment Status with UPS Letter).

**Claimant' Response May 9, 2021**

Let's be clear, Knox was obnoxious and upset that I wouldn't cross county lines to see a provider in Montgomery County with an injured ankle. The foot injury prevented me from bending my toes and rotating my ankle, so there was obvious nerve and tissue damage. I could barely walk and it was indeed painful. A note was provided and after my experience at the Urgent Care Center, and realizing how corrupt UPS and medical professionals, I decided not to return. My life and safety is a priority. It may not be to members of UPS but it's extremely important to me. I avoid aggressive people at all costs. There is nothing holy & sanctified, perfect, or ethical about members of UPS at the Willow Grove Warehouse.

No, I did not and for the above-referenced reasons. Where exactly is Lucia Peyton located? Philadelphia County? Montgomery County? Another state? All notices came from Business Development | 15 East Oregon Avenue, Philadelphia, PA 19148.

My employment at UPS was depressing and challenging, which I reported to my therapist. I was being harassed by multiple people, offered to remain permanent and reapplied to experience my account deactivated, to hear I'm terminated. I preferred to remain with Preload but the offer was reneged with no reason. I was being forced to return to a toxic work environment where I was being targeted by male Caucasians. I returned to the HUB to disclose what I mentioned to corporate in email, to remain in the same toxic environment. I was hired during a pandemic and it's extremely difficult securing a job when you are over 40. It's extremely difficult coping with harassment daily and thinking I may have to start all over again. After experiencing such loss and distress, I had no trust in speaking to anyone at UPS. You would only understand if you were a Black woman over 40 residing in the state of Pennsylvania.

17

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

III. RESPONSE TO CHARGE ALLEGATIONS

A. SEXUALLY HOSTILE WORK ENVIRONMENT (1 of 4)

To establish a prima facie case of a sexually hostile work environment, Cox must show harassing behavior "sufficiently severe or pervasive to alter the conditions of his [or her] employment." Wesley v. PNC Bank, 2020 U.S. Dist. LEXIS 233043, at *15 (E.D. Pa. Dec. 11, 2020). In determining whether an environment is sufficiently hostile or abusive, "courts must look to the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. The conduct "must be extreme to amount to a change in the terms and conditions of employment." Id.

The standard of employer liability under Title VII varies depending on whether the alleged harasser was a supervisor or merely a co-worker. In order to establish a claim for sexual harassment based on the conduct of a co-worker, Cox must prove: (i) she suffered intentional discrimination because of her sex; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondent superior liability. El v. Advance Stores Co., 2017 U.S. Dist. LEXIS 211887, at *20 (E.D. Pa. Dec. 27, 2017). As articulated by the Third Circuit, "[l]iability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action." Id. at 1486. Once an employer has notice of the alleged harassment, it must promptly and adequately address the situation. Id., FN 110. An employer's remedial action is adequate if it was reasonably calculated to prevent further harassment. Davis v. SEPTA, 2016 U.S. Dist. LEXIS 2106, at *38 (E.D. Pa. Jan. 8, 2016).

**Claimant' Response May 9, 2021**

A prima facie case of a sexually hostile environment has been proven based on the following: (1) I represent three protected classes: Black, Female, Age (2) I was over qualified for the position, as I achieved a Bachelor of Science. Both department managers testified I was offered a permanent role. I reported experiencing sexual & verbal harassment, vehicle damage and unpaid wages to both departments. A members of PD 13 were reprimanded for verbally harassing me. Nick was relocated to PD 11 for a little over a week and returned to continue his toxic behavior. After filing reports and complaining to Corporate Atlanta and I was terminated. Crossin' voicemail clearly indicates that he spoke to the HUB manager (acknowledging he spoke to Guarino) and they both decided not to keep me. He also mentioned that he heard that I was calling around asking about whether or not I was terminated since I could not log in to the system on several occasions. As a Black woman over the age of 40, I experienced sexual harassment from a veteran white Caucasian (who is friends with members of management) and reported the manner.

In addition, both departments reneged the permanent offers after a call was made to Corporate Atlanta regarding my inactive timecard at the Willow Grove warehouse. Although an email was received that a computer mistake occurred on the 19th, my barcode card was still inactive six days later on the 25th when I returned. On the 21st of January, a detailed email was sent to Corporate Atlanta, which was mentioned to Guarino and he asked about it at the meeting on the 25th. Documentation of each incident was reported same day on my phone, to my family and friends, so the call log and witness testimonies will not lie. I was in fact the only Black woman over 40 in the PD and as a result of the above mentioned, I decided to remove myself from the toxic environment. What is evident is that Chadzinski, Guarino, Crossin, Nick, Bratton and Norman Brothers are all white men.

# O'Nica Cox vs United Parcel Service Inc.
### EEOC Charge No.: 530-2021-01544

**Respondent' Message April 12, 2021**

III. RESPONSE TO CHARGE ALLEGATIONS

A. SEXUALLY HOSTILE WORK ENVIRONMENT (2 of 4)

To establish a prima facie case of a sexually hostile work environment, Cox must show harassing behavior "sufficiently severe or pervasive to alter the conditions of his [or her] employment." Wesley v. PNC Bank, 2020 U.S. Dist. LEXIS 233043, at *15 (E.D. Pa. Dec. 11, 2020). In determining whether an environment is sufficiently hostile or abusive, "courts must look to the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. The conduct "must be extreme to amount to a change in the terms and conditions of employment." Id.

The standard of employer liability under Title VII varies depending on whether the alleged harasser was a supervisor or merely a co-worker. In order to establish a claim for sexual harassment based on the conduct of a co-worker, Cox must prove: (i) she suffered intentional discrimination because of her sex; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondent superior liability. El v. Advance Stores Co., 2017 U.S. Dist. LEXIS 211887, at *20 (E.D. Pa. Dec. 27, 2017). As articulated by the Third Circuit, "[l]iability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action." Id. at 1486. Once an employer has notice of the alleged harassment, it must promptly and adequately address the situation. Id., FN 110. An employer's remedial action is adequate if it was reasonably calculated to prevent further harassment. Davis v. SEPTA, 2016 U.S. Dist. LEXIS 2106, at *38 (E.D. Pa. Jan. 8, 2016).

**Claimant' Response May 9, 2021**

I'm one Black woman over the age of 40 that experienced the above at Willow Grove by men. Explain how one woman should mentally, physically, socially, and spiritually deal with the sick fantasies, and cultural / traditional brainwashing of these men on the job, while working? And still go home and be a wife, mother, and friend. I was being drained and bullied by men. I experienced all these things because of what I brought to the table: strong competence & intelligence, sound judgment, knowledge & experience, excellent work ethic, and culturally savvy, until I could no longer mentally handle being there. I was forced to quit an organization that was unprepared for a strong woman like myself.

No woman, regardless of race enjoys experiencing sexual harassment, especially on the job. Bratton is a man, his sexual innuendos was communicated to me. He invading my space, stared into my eyes, and making unwanted consistent references to my beauty is unprofessional and against the law. Bratton is married. I am married. His behavior was consistent until I could no longer take it. Blaming me for his behavior or because I was hesitant to complain is ignorant or negligent. Sexual harassment is very common in the United States of America and the actions of men against women are detrimental. In 2021, equal wages and opportunities in management for women is still a major issue in this country, although women are acquiring more degrees and applying for senior management roles. Women are not paid or treated equally to men. The only reason I hesitated to complain was because I knew Bratton, a veteran union member would lie about his behavior and management cover for him. My experience isn't new. It happens all the time and men get away with breaking the law. Nothing has changed. Some men do shameful unprofessional things all the time and it's overlooked by colleagues, management, and human resources because he is a man with power.

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

III. RESPONSE TO CHARGE ALLEGATIONS

A. SEXUALLY HOSTILE WORK ENVIRONMENT (3 of 4)

To establish a prima facie case of a sexually hostile work environment, Cox must show harassing behavior "sufficiently severe or pervasive to alter the conditions of his [or her] employment." Wesley v. PNC Bank, 2020 U.S. Dist. LEXIS 233043, at *15 (E.D. Pa. Dec. 11, 2020). In determining whether an environment is sufficiently hostile or abusive, "courts must look to the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. The conduct "must be extreme to amount to a change in the terms and conditions of employment." Id.

The standard of employer liability under Title VII varies depending on whether the alleged harasser was a supervisor or merely a co-worker. In order to establish a claim for sexual harassment based on the conduct of a co-worker, Cox must prove: (i) she suffered intentional discrimination because of her sex; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondent superior liability. El v. Advance Stores Co., 2017 U.S. Dist. LEXIS 211887, at *20 (E.D. Pa. Dec. 27, 2017). As articulated by the Third Circuit, "[l]iability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action." Id. at 1486. Once an employer has notice of the alleged harassment, it must promptly and adequately address the situation. Id., FN 110. An employer's remedial action is adequate if it was reasonably calculated to prevent further harassment. Davis v. SEPTA, 2016 U.S. Dist. LEXIS 2106, at *38 (E.D. Pa. Jan. 8, 2016).

**Claimant' Response May 9, 2021**

I was preserving my job and was outnumbered by the "good ole boys". My experiences at UPS was intentional for several reasons: 1) I applied for a job I was overqualified for (2 Although it's a union job, having a degree qualifies me faster to management than members who have been waiting for seniority to kick in 3) I'm punctual, objective, vocal, ask questions, have an excellent work ethic, and have twenty years of corporate experience, therefore, I am deemed a threat and some men are intimidated by women who are competitive. Remember, I am one woman, working in a male-dominated role and succeeding without much effort. I was never written up and no one complained about me. I didn't sabotage my job. Insecure men aggressively targeted me until I could no longer take it. There is so much you can ignore, especially from multiple people (bullying). After being harassed and removed from my unit for no wrong doing, I sustained an injury quickly, I saw a different side to Guarino and decided that this job wasn't worth my life.

Let's be clear, sexual harassment can be verbal or physical and Bratton made several inappropriate sexual suggestions that made me, a married woman, who is loyal to her husband extremely uncomfortable at Willow Grove Warehouse. We were at work. Bratton knew better and ignored federal law and the organization's policy. And as a new hire, I was concerned about mentioning it because it would have been a no-win situation, as it has turned out to be. Bratton not only made verbal sexual suggestions, but he was infatuated with my physical appearance. I received daily compliments on my beauty. He stared at me constantly, and when my shift was over, and his still in place, Bratton, on most days, seemed to appear at the hallway as I was leaving.

20

# O'Nica Cox vs United Parcel Service Inc.
## EEOC Charge No.: 530-2021-01544

**Respondent' Message April 12, 2021**

III. RESPONSE TO CHARGE ALLEGATIONS

A. SEXUALLY HOSTILE WORK ENVIRONMENT (4 of 4)

Based on the facts described above, Cox cannot establish a prima facie case of a sexually hostile work environment or employer liability related to the same. First, the alleged conduct on which Cox bases her claim was not "severe" or "pervasive" enough to alter the conditions of her employment and create an abusive working environment. In her Charge, Cox vaguely alleges that she was "repeatedly sexually harassed" by her coworker, Bratton. As set forth above, Cox reported to her supervisors that Bratton made sexual comments to her during the month of November 2021. For example, Cox reported that on one occasion Bratton told her that one day another women got hot at work that she took off her shirt and worked in her bra. Though Bratton denies ever making any inappropriate comments, Courts have routinely held that "mere offensive utterances" do not rise to the level of actionable harassment sufficient to alter the conditions of employment. Kellerman, Supra. For this reason alone, Cox's sexually hostile work environment claim fails.

Second, there is no basis from which to impose respondeat superior liability. As explained above, Cox alleges that Bratton made sexual comments to her in November 2021. However, by Cox's own admission, she did not inform her supervisors that Bratton was allegedly sexually harassing her until December 11, 2021. Once aware of the alleged conduct, UPS immediately investigated the situation and promptly took action. Though UPS did not substantiate Cox's allegations, Cox was nevertheless reassigned to a new work area away from Bratton. It is undisputed that after Cox complained in December 2021, she had no further incidents with Bratton. The facts are clear that the actions of UPS immediately following Plaintiff's complaint(s) promptly and adequately addressed Plaintiff's concerns. For this separate and independent reason, Cox's sexually hostile work environment claim lacks merit and should be dismissed on a finding of no probable cause.

**Claimant' Response May 9, 2021**

Therefore, Bratton's behavior was consistently severe as it occurred daily, until I asked him to stop and reported it to Barry, Brandon, and Guarino. And remember, I wasn't supposed to be working in the Recycles Department anyway, which was near Quality Control and Bratton. The question that should be raised, is why during peak season I was demoted to Recycles during the busiest time of the year? Why was I demoted and moved to another department near Bratton. Ask UPS to explain that? I should have been in the trucks with loading with all the other loaders. Again, a happily married, Black woman in her 40s was specifically targeted because I was overqualified for the job, and was prepared to climb the corporate ladder quickly based of qualifying factors: corporate experience, a degree, excellent work ethic, ambition, and most people in the building genuinely liked and enjoyed my presence. I was denied the opportunity to succeed because I refused to play along with the "boys' club antics".

I was in need a job and was uncertain about reporting sexual harassment only two weeks on the job. I was in shock, disturbed and was unaware of how to approach the matter. I don't destroy bridges, I build them. I was attempting to figure out how to respond to the situation appropriately. Apparently, I took it easy on the senior citizen that was sabotaging my employment. Do you know what happens when women start reporting such behavior from a veteran of the organization that everyone has already established a relationship with. No one knew me. Acting to quickly would have created a terrible experience for me as a newbie, female or not. My compliant is valid and the testimony of my friends and family will establish that.

21

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

III. RESPONSE TO CHARGE ALLEGATIONS

B. DISCRIMINATION BASED ON RACE AND SEX (1 of 3)

The elements of a prima facie case are the same for discrimination claims on the basis of sex and race. Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016). To establish a prima facie case of race or sex discrimination, Cox must first show that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. Based on the facts described above, Cox cannot satisfy the third and fourth element of a prima facie case of discrimination.

First, Cox did not suffer an adverse employment action. As demonstrated above, Cox voluntarily resigned from employment of March 4, 2021. As such, to prevail, Cox must demonstrate that she was "forced to resign or constructively discharged under circumstances that give rise to an inference of racial [or gender] discrimination." Seeney v. Elwyn, 409 F. App'x 570, 573 (3d Cir. 2011). To establish constructive discharge, Cox must show that UPS "knowingly permitted conditions of discrimination in the workplace 'so intolerable that a reasonable employee facing the same conditions would leave the job." Id. Courts consider multiple factors, including whether: (1) she was threatened with discharge; (2) she was encouraged to resign; (3) she was demoted or suffered a reduction in pay or benefits; (4) she was involuntarily transferred to a less desirable position; (5) her job responsibilities were altered; and (6) she began receiving unsatisfactory job evaluations. Id.

**Claimant' Response May 9, 2021**

As previously mentioned, based on the adverse actions of men with seniority and power at UPS Willow Grove, I was forced to terminate my employment due to the hostile work environment created by members of management and the union. My work environment was deemed hostile based on the following reasons:

1. Security at gate harassed by daily by asking if I was in possession of a gun and searching through my bad

2. Nick, who reported to Barry, called me dyslexic, body shamed me and basically overly harassed me daily in the presence of Barry. I reported his behavior to Barry who relocated him to PD 11 for a week. Check the system and validate where he was clocking in for over a week. He also asked several union members to train me and it was unnecessary and not procedure.

3. A black union member sexual harassed me openly in front of Barry, by asking Barry to move out of his way so he can watch me bend over. After I defended myself and reminded him that I'm married and not interested in him or anyone at UPS, he because aggressively uncomfortable being around.

4. I was shortly after demoted by Barry to Recycles and had no idea until Scott (sole member of Recycles mentioned it.

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

III. RESPONSE TO CHARGE ALLEGATIONS

B. DISCRIMINATION BASED ON RACE AND SEX (2 of 3)

The elements of a prima facie case are the same for discrimination claims on the basis of sex and race. Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016). To establish a prima facie case of race or sex discrimination, Cox must first show that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. Based on the facts described above, Cox cannot satisfy the third and fourth element of a prima facie case of discrimination.

First, Cox did not suffer an adverse employment action. As demonstrated above, Cox voluntarily resigned from employment of March 4, 2021. As such, to prevail, Cox must demonstrate that she was "forced to resign or constructively discharged under circumstances that give rise to an inference of racial [or gender] discrimination." Seeney v. Elwyn, 409 F. App'x 570, 573 (3d Cir. 2011). To establish constructive discharge, Cox must show that UPS "knowingly permitted conditions of discrimination in the workplace 'so intolerable that a reasonable employee facing the same conditions would leave the job." Id. Courts consider multiple factors, including whether: (1) she was threatened with discharge; (2) she was encouraged to resign; (3) she was demoted or suffered a reduction in pay or benefits; (4) she was involuntarily transferred to a less desirable position; (5) her job responsibilities were altered; and (6) she began receiving unsatisfactory job evaluations. Id.

**Claimant' Response May 9, 2021**

5. Now I'm near Bratton, who begins, asking questions about my marital status, my commute, the type of car I drove, and his experiences with women when he started in HUB, and why I would not remain at UPS. I put Bratton in his place and reminded him that he doesn't make the hiring decisions at UPS, my personal life is not his concern, although I had mentioned the type of car I drove, and that his sexual innuendoes is not welcome because I'm married.

6. My vehicle is found vandalized

7. My barcode card is deactivated several time, so I was not able to clock in and out like everyone else. I reported the matter to Barry, who said I should write my hours down. My paycheck was short and the hours was never recovered. I mentioned to Brandon, who reports to Guarino, who did not make the correction.

8. After reapplying for a permanent role in Preload, my employee ID was deactivated and on the 25th. When I returned still not able to clock in or out. And the time was not provided to payroll for processing.

23

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

III. RESPONSE TO CHARGE ALLEGATIONS

B. DISCRIMINATION BASED ON RACE AND SEX (3 of 3)

Neither the allegations in Cox's Charge, nor the facts set forth above, are sufficient to give rise to a plausible inference that Plaintiff was constructively discharged as a result of race or sex discrimination. Indeed, Cox does not allege and cannot establish that she was threatened with discharge, encouraged to resign, demoted or suffered a reduction in pay or benefits, involuntarily transferred to a less desirable position, her job responsibilities were altered or that she received an unsatisfactory job evaluations. To the contrary, the facts show that UPS repeatedly made efforts to address Cox's concerns and return her to work. For this reason alone, Cox's race and sex discrimination claims fail.

Even if Cox could establish a prima facie case, UPS has articulated a legitimate, non-discriminatory, non-retaliatory reason for her termination. That is, failure to return to work or follow up on the status of her employment for thirty-eight (38) days. As discussed above, Cox's Seasonal employment was terminated on January 17, 2021 as a matter of course. However, she was re-hired on January 18, 2021 in a permanent position. On her first day back, January 25, 2021, Cox sustained a workplace injury for which she sought medical evaluation. On January 27, 2021, Cox was returned to work with modified duties (i.e., non-physical, administrative duties) by the Company's approved medical provider. However, Cox never returned to work. More than a month later, on March 4, 2021, Cox called HR stating that she was not returning to work and abruptly hung up the phone. Accordingly, UPS accepted Cox's voluntary resignation effective March 4, 2021. This legitimate, non-discriminatory, non-retaliatory reason for Cox's termination is well documented and is not pretextual in nature. For these reasons, Cox's allegations fail and her Charge should be dismissed upon a finding of no probable cause.

**Claimant' Response May 9, 2021**

There is no recording of I ever being in the building, nor was I paid. Why didn't Guarino and Crossing record and report time worked? Oh, and on the 20th, I was officially terminated from both departments and if that was not the case, I would have easily clocked in and out with no trouble. I have proof. The behavior of management and the union was threatening, especially when Guarino walked in the office swinging a wrench, while standing two feet ear me, with an injury, while Pat watched. Per above, my immediate supervisor, Barry demoted / transferred my duties to Recycles, thus altering my job function. UPS employees permitted / ignored the discrimination and retaliated when I called corporate for answers regarding my employment status, per Crossin' voicemail. Exactly, based on the above referenced incidents, which I deem consistently discriminatory, hostile and retaliatory, I decided Willow Grove was extremely toxic and negligent and not the right fit for someone of my caliber. No employer can give me an unsatisfactory evaluation, as I always excel regardless of the situation.

Review the above, attached voicemail messages, and letters from my family. There is no way Corporate Atlanta could possibly know what goes on at Willow Grove. I don't know what woman, regardless of her race would want to return to such a toxic, unprofessional, and unorganized organization. Management is irresponsible, lax, and require replacing. There was a breach of VII of the Civil Rights Act of 1964, Labor Laws, etc.

24

# O'Nica Cox vs United Parcel Service Inc.
## EEOC Charge No.: 530-2021-01544

**Respondent' Message April 12, 2021**

B. DISCRIMINATION BASED ON AGE

To establish a prima facie case of age discrimination, Cox must first show that she "(1) belongs to a protected class, i.e. is at least 40 years of age; (2) was qualified for the position; (3) was dismissed despite being qualified; and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination." Liou v. Le Reve Rittenhouse Spa, LLC, 2019 U.S. Dist. LEXIS 52589, at *6 (E.D. Pa. Mar. 27, 2019). . Based on the facts described above, Cox cannot satisfy the third and fourth element of a prima facie case of age discrimination.

First, Cox alleges no set of facts to support her claim of age discrimination other than the fact that she is forty-six (46) years old. Accordingly, Cox's age discrimination claim fails. Even if Cox could establish a prima facie case of age discrimination, the burden again would shift to UPS to articulate some legitimate nondiscriminatory reason for its employment action. As explained above, UPS carried this burden and has articulated legitimate non-discriminatory, non-retaliatory reasons for the termination. Accordingly, there is no basis to conclude that Cox was discriminated against and her Charge should be dismissed upon a finding of no probable cause.

**Claimant' Response May 9, 2021**

The facts were presented above:

- I'm a Black woman over the age of 40

- I was overqualified for the position

- I worked in an environment that is predominantly male.

- My supervisor demoted me, failed to report my hours and hold members of the union accountable for their actions towards me.

- I was racially profiled by security every day until end of December

- My barcode time card was repeatedly deactivated, which resulted in unreported hours worked.

- I was treated unfairly and poorly because I refused to tolerate the unlaw behaviors of the "boys club".

- My vehicle was mysteriously vandalized

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-1544**

**Respondent' Message April 12, 2021**

C. RETALIATION

To establish a prima facie case of retaliation, Cox must show that (1) she engaged in a protected activity; (2) either contemporaneously with or after the activity, the Company took an action adverse to the employee; and (3) there was a "causal link between the adverse action and the protected activity." Leiman v. Nutrisystem, Inc., 2019 U.S. Dist. LEXIS 111192, at *20 (E.D. Pa. July 3, 2019). Based on the facts described above, Cox cannot satisfy the second and third element of a prima facie case of retaliation.

First, as explained in Section III(B) above, Cox cannot demonstrate that the Company took an action adverse to her. Moreover, the perceived "termination" on which Cox bases her retaliation claim was the result of an honest breakdown in communication between Preload Manager Crossin and the Hub Manager. Upon discovery of the mix-up, the Hub Manager immediately contacted Cox, apologized for the confusion, and directed her to report to work the following Monday morning, which she did.

Beyond that, Crossin was unaware of any reports of harassment made by Cox prior to his call with Cox on December 21, 2021. As such, it is axiomatic that Crossin could not have retaliated against her for engaging in such activity. Stated differently, there is no causal link between the alleged adverse action and the protected activity. Accordingly, there is no basis to conclude that Cox was retaliated against and her Charge should be dismissed upon a finding of no probable cause.

**Claimant' Response May 9, 2021**

- I returned to work on the 19th and 25th and my employee ID was still deactivated.

- Crossin's voicemail indicates he spoke to Guarino and they both decided not to keep me when I decided to stay in Preload instead of the HUB.

- I sustained a work related injury and Guarino walked in the office with a large wrench in hand, while I was in the office with another Caucasian male, Pat.

- I was treated unprofessionally by members of the medical center where treatment was necessary.

- The HR rep, hiring manager, supervisors, operations managers, members of management were all male, including the legal and compliance director at corporate Atlanta.

- I surpassed their expectations by rising above the discrimination, speaking out, and refusing to adopt to the toxic culture. I was more than qualified, regardless of the stereotypes, as a Black educated woman, I showed them I was more than capable of succeeding, if not for the institutionalize systemic cultures & traditions set in place to marginalize Black people.

Based on the above should suffice that there was planned harassment and retaliation.

26

# O'Nica Cox vs United Parcel Service Inc.
**EEOC Charge No.: 530-2021-01544**

**Respondent' Message April 12, 2021**

V. CONCLUSION

Based on the foregoing, UPS respectfully requests that the EEOC dismiss Cox's Charge on a finding of no probable cause. Should you require any further information or documentation, please communicate with me at your convenience.

**Claimant' Response May 9, 2021**

In conclusion, UPS is liable for the actions of its employees relating to 1) sexual and verbal harassment 2) harassment during training 3) unwarranted demotion 4) vehicle damage 5) unpaid wages 6) workers compensation pay & medical 7) pain and suffering 8) humiliation 9) retaliation 10) barcode card deactivation 11) management neglected reporting hours worked 12) outdated timecard machine 13) filthy unsanitary conditions 14) no a/c or heating, etc. My delayed response in reporting the actions of these individuals doesn't negate the fact that the incidents occurred at the Willow Grove warehouse, under the leadership of Jack Chudzinski & Joe Guarino and rolls up the management hierarchy.  At this time I'm requesting $2,500,000 for breeching Title VII of the Civil Rights Act of 1964, Employment and Labor Laws, medical, previous and current lost wages, pain and suffering, humiliation and damages I may never recover.

Black lives matter. My life as a Black woman over the age of 40 matters and discrimination in any form is not tolerated from any member of the UPS organization.

UPS is responsible for the advertent and inadvertent actions of the members of management and the union at Willow Grove, by ensuring all members, based on their policies and procedures and federal laws, are treated fairly and equally, feel protected and free to climb the corporate ladder without experiencing any form of adverse actions based on cultural / traditional brainwashing or ignorance or the combination of both.

27

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Onica Cox**<br>**6015 N 11th Street**<br>**Philadelphia, PA 19141** | From: | **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2021-01544** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9707** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☒ | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| ☐ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Dana R. Hutter*          8/27/2021

Enclosures(s)

**Dana R. Hutter,**
**Deputy Director**          *(Date Issued)*

cc:

| **Felicia Brogden**<br>**Sr Legal Administrative Assistant**<br>**UPS UNITED PARCEL SERVICE**<br>**55 Glenlake Parkway**<br>**Atlanta, GA 30328** | **Lindsey Boyd**<br>**Dinsmore & Shohl**<br>**255 E 5TH ST**<br>**STE 1900**<br>**Cincinnati, OH 45202** |
|---|---|

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*