**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ONICA COX, | : | |
|     **Plaintiff,** | : | |
| | : | |
|     **v.** | : | **CIVIL ACTION NO. 21-CV-5166** |
| | : | |
| UNITED PARCEL SERVICE, INC. | : | |
|     **Defendant.** | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                         **JANUARY  12, 2022**

*Pro se* Plaintiff Onica Cox filed a Complaint against her former employer Defendant

United Parcel Service, Inc. ("UPS"), alleging that she was subjected to employment

discrimination, harassment, and retaliation.  Cox also filed a Motion to Proceed *In Forma*

*Pauperis*.  For the following reasons, the Court will grant Cox leave to proceed *in forma*

*pauperis* and dismiss her Complaint in part without prejudice pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii).  Because two of Cox's claims will be dismissed without prejudice, she will

be granted the option of filing an amended complaint to attempt to cure the defects discussed

below or proceed only on the claims that pass statutory screening.

**I.       FACTUAL ALLEGATIONS**

Cox asserts that UPS discriminated against her based on her race, sex, age, and disability.

She also asserts that she endured sexual harassment and that UPS retaliated against her after she

reported the harassment.  (ECF No. 2 at 2.)[1]  Cox is an African-American woman over the age of

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.  Cox used
the standard form complaint available for use by unrepresented litigants seeking to file a lawsuit
in the United States District Court for the Eastern District of Pennsylvania.  She attached to her
Complaint:  (1) two grievances Cox filed with the UPS Ethics Hotline (ECF 2 at 7-10); (2) an
email Cox sent to the UPS Chief Diversity, Equity, and Inclusion Officer (*id*. at 11); (3) a letter

40. (*Id*. at 15.)  In November 2020, Cox was hired by UPS as a full-time package handler.  (*Id*. at 16.)  All of Cox's supervisors and managers were allegedly men.  (*Id*. at 15.)  She repeatedly refers to the culture as "the boys club" and claims that she was not valued because she is an African-American woman.  (*Id*. at 11, 18-19.)  She alleges that she was also treated differently on account of her age.  (*Id*. at 4.)  She claims that the "younger and more physically fit" employees at UPS were given preferential treatment and truck assignments.  (*Id*.)

Cox asserts that her supervisor was "verbally abusive" during training and that her complaints about it "lead to a temporary relocation."  (*Id*. at 4.)  Cox also asserts that she was subjected to sexual comments and gestures by two male employees.  (*Id*. at 4, 7.)  She reported the sexual harassment to her supervisor and manager.  (*Id*. at 7.)  After Cox complained about the sexual harassment, she was allegedly retaliated against by UPS.  (*Id*. at 11, 37.)  Cox's car was vandalized in the UPS parking lot.  (*Id*. at 9-10.)  She was treated differently by her mostly male coworkers.  (*Id*. at 19.)  Finally, Cox was terminated in January 2021.  (*Id*. at 4.)  She asserts that, after she complained "to the corporate office" about being terminated and about the harassment and discrimination she experienced at UPS, she was told to return to work and that the termination was just a "computer mistake."  (*Id*. at 4.)

When Cox returned to work, she suffered an ankle injury.  (*Id*. at 4, 11.)  UPS allegedly required Cox to treat her injury with UPS-designated doctors and not medical providers of her own choosing.  (*Id*. at 4-5.)  Cox alleges that even though she suffered "torn ligaments and

---

from Cox's psychologist (*id*. at 13); (4) a PowerPoint presentation prepared by Cox to support her charge with the Equal Employment Opportunity Commission ("EEOC") (*id*. at 14-40); and (5) an EEOC Notice of Right to Sue Letter dated August 27, 2021 (*id*. at 41-42).  She also submitted a voicemail attachment in MP4 format.  The Court will consider the attachments to the Complaint in conducting the statutory screening of Cox's claims.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Philyaw v. Bynum*, Civ. A. No. 06-6137, 2007 WL 162774, at *1 (D.N.J. Jan. 18, 2007).

severe tissue damage, . . . could barely walk and had no feeling in [her] foot," UPS required her

to return to work.  (*Id*. at 4-5.)  Cox ultimately "left and never returned."  (*Id*. at 5.)  In addition

to the discrimination and harassment, Cox also asserts that she was not paid for all the hours she

worked.  (*Id*. at 18.)  On one occasion she completed five hours of orientation but was only paid

for two of those hours.  (*Id*. at 4, 16.)

Based on these facts, Cox asserts the following claims:  (1) Title VII of the Civil Rights

Act ("Title VII"), which prohibits employment discrimination based on race, color, gender,

religion, and national origin; (2) the Age Discrimination in Employment Act ("ADEA"), which

prohibits employment discrimination based on age; and (3) the Americans with Disabilities Act

("ADA"), which prohibits employment discrimination based on an employee's disability or

perceived disability; (4) The Genetic Information Nondiscrimination Act ("GINA"), which

prohibits employment discrimination based on genetic information; and (5) the Equal Pay Act

("Pay Act"), which prohibits differential pay for men and women performing equal work.  (ECF

No. 2 at 3.)  Cox seeks 2.5 million dollars in compensatory and punitive damages.  (*Id*. at 5.)  As

set forth more fully below, Cox's claims under GINA and the Pay Act will be dismissed without

prejudice.  She will be afforded the opportunity to attempt to amend those claims or the option of

proceeding only on her Title VII, the ADA, and ADEA claims that pass statutory screening.

## II.    STANDARD OF REVIEW

The Court grants Cox leave to proceed *in forma pauperis* because it appears that she is

incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether

a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher*

*v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678. As Cox is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

### A.    Title VII, ADA, and ADEA Claims

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability.  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112).  Federal law also prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes, or because he made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes.  *See* 42 U.S.C. § 2000e-3; *E.E.O.C.*, 778 F.3d at 449.  Cox has stated plausible discrimination, harassment, and retaliation claims against UPS under Title VII.  She has also stated plausible discrimination claims under the ADEA and the ADA.  These claims will be served for a responsive pleading.

4

**B.    GINA Claim**

Title II of GINA prohibits genetic-information discrimination in employment.  *See* 42

U.S.C. § 2000ff-1(a).[2]  Under GINA, "it is an unlawful employment practice" to "refuse to hire,

or to discharge, any employee, or otherwise to discriminate against any employee with respect to

the compensation, terms, conditions, or privileges of employment" because of the employee's

"genetic information."  *Id*. § 2000ff-1(a)(1).  GINA also makes it unlawful for an employer to

"segregate" or "classify" employees "in a way that would deprive" them "of employment

opportunities" due to that employee's "genetic information."  *Id*. § 2000ff-1(a)(2).  Finally,

GINA prohibits employers from acquiring the genetic information of an employee or of an

employee's family member.  *Id*. § 2000ff-1(b).  "Genetic information" means, with respect to

any individual, information about:  "(i) such individual's genetic tests, (ii) the genetic tests of

family members of such individual, and (iii) the manifestation of a disease or disorder in family

members of such individual."  42 U.S.C. § 2000ff(4)(A); 29 C.F.R. § 1635.3(c); *see also Ortiz v.

City of San Antonio Fire Dep't*, 806 F.3d 822, 826 (5th Cir. 2015) (affirming entry of summary

judgment on GINA claim where employer did not discriminate based on genetic information but

rather only required that employee participate in wellness program); *Powell v. Lab Corp*., 789 F.

App'x 237, 240 (2d Cir. 2019) (affirming dismissal of GINA claim where employee's

termination was based on a drug test, which is not "genetic information" under the statute).

GINA provides for a private civil cause of action.  *See* 42 U.S.C. § 2000ff-6(a)(3).

Cox does not allege that she was terminated, classified, or otherwise deprived of

employment opportunities on account of her genetic information.  She does not allege that UPS

---

[2] Title I of GINA prohibits genetic-information discrimination in health insurance.  *See*
42 U.S.C. § 300gg-53.

ever requested genetic information or that she underwent any genetic testing.  Accordingly, Cox

fails to state a plausible claim that she was subjected to genetic-information discrimination.  *See*

*Benoit v. Pennsylvania Bd. of Prob. & Parole-W. Div.*, Civ. A. No. 09-4047, 2010 WL 481021,

at *2 (E.D. Pa. Feb. 9, 2010) (dismissing GINA claim with prejudice where *pro se* plaintiff did

not allege any facts to state a plausible claim).  However, because the Court cannot say at this

time that Cox cannot cure this defect, she will be permitted the opportunity to amend the

Complaint if she is able to allege facts to state a plausible GINA claim.

  **B.     Pay Act Claim**

  To state a claim under the Pay Act, "the plaintiff must show that members of the opposite

sex get paid more for equal work 'on jobs the performance of which requires equal skill, effort,

and responsibility, and which are performed under similar working conditions.'"  *Delprato v.*

*Day Chevrolet Inc.*, 427 F. App'x 86, 89 (3d Cir. 2011) (quoting *Corning Glass Works v.*

*Brennan*, 417 U.S. 188, 195 (1974)); *see also Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir.

2000).[3]  Cox does not allege any facts to support a Pay Act claim.  She does not allege that male

coworkers were paid differently for performing equal work.  Cox does not discuss UPS pay rates

_____

  [3] The Pay Act states, in relevant part:

  No employer having employees subject to any provisions of this section shall
  discriminate, within any establishment in which such employees are employed,
  between employees on the basis of sex by paying wages to employees in such
  establishment at a rate less than the rate at which he pays wages to employees of
  the opposite sex in such establishment for equal work on jobs the performance of
  which requires equal skill, effort, and responsibility, and which are performed
  under similar working conditions, except where such payment is made pursuant to
  (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings
  by quantity or quality of production; or (iv) a differential based on any other factor
  other than sex . . . .

29 U.S.C. § 206(d)(1).

at all.  Nor does Cox describe the requirements and performance of her job as compared to the jobs of her male coworkers.  Cox alleges only that she was not paid for certain hours that she worked.  This is not sufficient to state a plausible claim under the Pay Act since there is no assertion that persons of the opposite sex were paid for hours when Cox was not.  The Court will, however, afford Cox the opportunity to attempt to amend this claim as well.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Cox's Motion to Proceed *In Forma Pauperis* and dismiss without prejudice her GINA and Pay Act claims for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Only the Title VII, ADA, and ADEA claims will proceed past statutory screening.  However, the Court will give Cox the option of filing an amended complaint if she is able to cure the defects the Court has identified in her GINA and Pay Act claims.  In the alternative, Cox can advise the Court that she opts to proceed only with respect to her Title VII, ADA, and ADEA claims, and the Court will direct service against UPS as to those claims only.

An appropriate Order follows with additional instruction on amendment.

**BY THE COURT:**

 **/s/ John Milton Younge**

**JOHN M. YOUNGE, J.**